IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN CANNICI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 1:16-cv-09863 |
| vs. | ) |
| | ) Honorable Elaine E. Bucklo |
| VILLAGE OF MELROSE PARK, | ) |
| ILLINOIS, BOARD OF FIRE AND | ) Magistrate Judge Mary M. Rowland |
| POLICE COMMISSIONERS OF | ) |
| MELROSE PARK, ILLINOIS, | ) |
| MICHAEL CAPUTO, MARK RAUZI | ) |
| and PASQUALE ESPOSITO, | ) |
| Members of the Board of Fire | ) |
| and Police Commissioners of | ) |
| Melrose Park, RICHARD | ) |
| BELTRAME, Melrose Park Fire | ) |
| Chief, and RONALD SERPICO, | ) |
| Mayor of Melrose Park, Individually | ) |
| and In Their Official Capacities, | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF, JOHN CANNICI'S, RESPONSE IN OPPOSITION TO DEFENDANTS, BOARD OF FIRE AND POLICE COMMISSIONERS OF MELROSE PARK, and COMMISSIONERS MICHAEL CAPUTO, MARK RAUZI, and PASQUALE ESPOSITO'S, MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**

Plaintiff, John Cannici ("Mr. Cannici"), by his attorneys, the Law Offices of Ruth I. Major, P.C., for his Response in Opposition to Defendants, Board of Fire and Police Commissioners of Melrose Park, and Commissioners Michael Caputo, Mark Rauzi, and Pasquale Esposito's, Motion to Dismiss Pursuant to §12(b)(6)[1], states as follows:

**INTRODUCTION**

---

[1] The title of the motion references "§12(b)(6)" though Plaintiff assumes Defendants intended to reference Fed. R. Civ. P. 12(b)(6).

1

Plaintiff John Cannici, a native of Melrose Park, served as a firefighter for Melrose Park for 16 years before his employment was terminated. The basis for the termination was purportedly a Village Ordinance which required that Village employees maintain residency in Melrose Park. Cannici has filed a claim against Defendants for administrative review (as to the Defendant Board) as well as a claim for violation of his due process rights (as to Defendant Board, Caputo, Rauzi, Esposito, and Beltrame) and for violation of his equal protection rights (as to all Defendants). Defendants are moving to dismiss his complaint based on their misunderstanding of federal law. Specifically, Defendants argue that an employee does not have a right to the minimum protections of due process before his or her employment is terminated as long as the employee is afforded due process post termination, even though the U.S. Supreme Court and the Seventh Circuit Court of Appeals have held just the opposite, requiring that the minimum due process rights be provided to employees before termination regardless of how robust the post-termination procedures may be. Defendants have also taken an oversimplified view of the application of federal equal protection rights in the employment context contrary to decisions of the U.S. Supreme Court and the Seventh Circuit Court of Appeals, which recognize that due process claims can be brought in the employment context even if not tethered to claims of discrimination based on race, national origin or gender. Finally, Defendants incorrectly assert that they are afforded absolute immunity, as they neglect to consider that absolute immunity does not apply where it would prevent recourse for a party who suffered a violation of the principles of fairness protected by the Constitution. As more fully explained below, Defendants' motion to dismiss should be denied in its entirety.[2]

---

[2] Plaintiff does not challenge Defendants' request that if the federal claims are dismissed that the matter return to state court.

**ARGUMENT**

**A. Plaintiff John Cannici was Denied Due Process Pretermination.**

Defendants argue that if a public employee is denied due process pretermination, that violation is excused so long as there is an adequate post-termination process in place. Defendants' position does not align with the holding of the U.S. Supreme Court's decision in *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985). Rather, *Loudermill* recognized employees are entitled to due process *before* their employment is terminated, explaining its long-held position that the "root requirement" of the Due Process Clause is "that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest." *Id.* at 542, citing *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971) (emphasis in original). The issue before the Court in *Loudermill,* as well as in the Seventh Circuit case *Michalowicz* (another case misinterpreted by Defendants)*,* was whether the employee received a hearing that satisfied the minimal requirements of due process. The *Loudermill* Court recognized 'an essential principle of due process is that the deprivation of life, liberty, or property be <u>preceded</u> by notice and an opportunity for hearing appropriate to the nature of the case'. *Loudermill* at 542, citing *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313 (1950) (emphasis added). The Court summed up the issue succinctly "[e]ven decisions finding no constitutional violation in termination procedures have relied on the existence of some pretermination hearing opportunity to respond." *Id.* For there to be due process, the pretermination hearing must satisfy the "constitutional minima." *Id.* Accordingly, an employee must be afforded at least the minimum due process protections or his or her constitutional rights are deemed violated.

The U.S. Supreme Court in *Loudermill* explained the rationale underlying the requirement of due process in advance of termination is "the severity of depriving a person of the means of

3

livelihood" and that where there are disputed facts, the "only meaningful opportunity to invoke the discretion of the decisionmaker is likely to be before the termination takes effect." The Seventh Circuit Court of Appeals confirmed the necessity of due process pretermination when it wrote, "'even where there is a robust post-termination procedure, though, a <u>meaningful</u> <u>opportunity</u> to be heard <u>before</u> the employer decides on termination is a <u>critical protection</u>.'" *Carmody v. Board of Trustees of University of Illinois,* 747 F.3d 470, 475 (7th Cir. 2014) (emphasis added). In *Carmody,* the Seventh Circuit provided an in-depth analysis on the importance of due process pre-hearing, explaining that it is consistent with what has been "shown by decades of behavioral research: once an individual or group has made a decision to take a particular course of action, it becomes harder and harder to change course, even in the face of powerful conflicting evidence and reasons." *Id.* at 475. Based on this rationale, the Seventh Circuit held that plaintiff's arguments that he was denied due process pretermination when the University failed to "comply with the minimal requirements of *Loudermill"* were sufficient to survive defendants' motion to dismiss. *Id.*

Plaintiff Cannici's allegations in support of his Complaint are not that he was denied discovery or supplemental safeguards going beyond the minimum requirements of due process, but that the Board, through its attorney, was collaborating with the prosecuting attorney about the issues in the case *ex parte.* In fact, unbeknownst to Mr. Cannici and *ex parte,* the Board's attorney was providing the prosecuting attorney with caselaw addressing the very issues that were to be resolved by the Board. The Board's attorney also specially notified the prosecuting attorney, again *ex parte,* of an upcoming status hearing before the Board, which the prosecuting attorney then attended, though no notice was given to Plaintiff Cannici or his attorney who then were not present. When these issues were raised with the Board pursuant to Cannici's motion to remove the attorneys or to enter a ruling in his favor based on the fact the process had been tainted, the Board summarily

denied the motion with no explanation. The Board proceeded with the hearing and issued a ruling that ignored Illinois law on residency and rejected any evidence that was favorable to Plaintiff Cannici. The Board went as far as to mischaracterize Cannici's evidence and reject his unimpeached testimony. Cannici is not alleging that he was afforded the minimum due process protections. Just the opposite, he is contending that due to the improper *ex parte* communications the Board engaged in with the prosecuting attorney and the clear one-sided decision that followed, he was denied a meaningful opportunity to be heard. In Paragraph 100, Plaintiff Cannici specifically alleged, "Defendants Board, Caputo, Rauzi, Esposito and Beltrame terminated Firefighter Cannici's employment with knowledge that the attorney prosecuting the matter had engaged in *ex parte* discussions with the Board, through counsel." (Verified Complaint for Administrative Review and for Other Claims and Relief, attached hereto as Exhibit A, ¶ 100). In fact, the Board denied this motion without any explanation and refused even to consider replacing its counsel or the prosecuting attorney (Ex. A, ¶ 46). In Paragraph 101 of the Complaint, Plaintiff Cannici alleged, "Defendant Beltrame brought charges to terminate Firefighter Cannici's employment, and Defendants Board, Caputo, Rauzi, and Esposito terminated Firefighter Cannici's employment, by disregarding controlling legal precedent, ignoring undisputed testimony and evidence that was favorable to Firefighter Cannici, relying on speculation that was contrary to the undisputed evidence admitted at the hearing, and by misrepresenting the evidence in the case in its decision to terminate Plaintiff's employment."  (Ex. A, ¶ 101). The details of those allegations are found in Paragraphs 41-46 and 47-67.  (Ex. A, ¶¶ 41-46, 47-67).

From before the hearing was held through the time the decision was issued it was clear the charge against Mr. Cannici was not before a Board that was fair and unbiased, which is a fundamental tenet of due process. "A fair hearing before a fair and unbiased adjudicator is a <u>basic

5

<u>requirement</u> of due process under the Fourteenth Amendment." *Withrow v. Larkin*, 421 U.S. 35, 46 (1975) (emphasis added). Under no circumstances is it constitutional to deny an employee his or her basic due process rights before termination. Defendants' reliance on the Seventh Circuit's decision in *Michalowicz* is misplaced because there the court found that the plaintiff sought not just a hearing that satisfied the minimum protections required for due process to be had, but rather sought a "full panoply of protections." *Michalowicz*, 528 F.3d at 537. On top of that, the court in *Michalowicz* confirmed that the plaintiff had received "such a hearing." *Id.* The plaintiff's allegations in *Michalowicz* did not include allegations of *ex parte* communications calling into question the impartiality of the tribunal. The *ex parte* communications bearing directly on the issues in this case, <u>coupled</u> with the Board summarily rejecting the motion regarding those communications and then disregarding the undisputed evidence, mischaracterizing the testimony of Cannici, and all but ignoring Illinois law, distinguishes this case from *Michalowicz.* To the extent Defendants argue that it does not matter how in fact the hearing was handled as long as "state procedures exist" providing for due process pretermination, this argument was rejected by the Seventh Circuit in *Carmody,* a decision issued post-*Michalowicz,* where there was no dispute that state procedures were in place but the issue was whether the University followed them. In fact, in *Carmody*, the Court found the plaintiff's due process rights had been violated pretermination even though plaintiff voluntarily waived his postermination due process rights, demonstrating the great weight federal courts place on the pretermination hearings. There is simply no question employees have a right to pretermination due process and when they are denied a meaningful hearing pretermination a motion to dismiss must be denied. Accordingly, just as in *Carmody*, the allegations in Plaintiff Cannici's Complaint are sufficient to survive a motion to dismiss. Plaintiff Cannici's allegations support a claim that he was denied a meaningful hearing pretermination.

### B. Plaintiff John Cannici was Denied Equal Protection Under the Law.

Defendants argue that an Equal Protection claim can only be brought by an employee alleging race, national origin or gender discrimination. That position, however, is contradicted by the very case they rely on, *Engquist v. Oregon Dept. of Agr.*, 553 U.S. 591, 605 (2008). In fact, in *Engquist,* the Supreme Court specifically stated that it was not excepting public employees "from the Fourteenth Amendment's protection against unequal and irrational treatment." *Id.* In support, it cited approvingly numerous decisions in which the Court addressed Equal Protection cases in the employment context where race, national origin or gender was not at issue and stated "[o]ur cases make clear that the Equal Protection Clause is implicated when the government makes class-based decisions in the employment context, treating distinct groups of individuals categorically different." *Id.* One of the cases the Court referenced as an example was *New York City Transit Authority v. Beazar,* in which the Court considered whether a rule by a public employer prohibiting the employment of methadone users was a violation of the Due Process Clause. Methadone use does not constitute "race, gender or national origin," and accordingly the Supreme Court's reference to the decision in *Beazer* confirms that Equal Protection in the employment context is not limited to only those cases where plaintiff's race, gender or national origin is at issue. Further, the Supreme Court's references to *Beazer* and other Equal Protection cases in the employment context clarifies that it was not, as Defendants here argue, issuing a blanket denial of Equal Protection claims in all employment cases. Rather, the *Enguist* decision was focused on the at-will employment relationship and decision that are subjective and wholly discretionary. In fact, in explaining why the Court was not applying the Equal Protection clause in *Engquist*, the Court wrote, "[w]e long ago recognized the 'settled principle that government employment, in the absence of legislation, can be revoked at the will of the appointing officer." *Id.*, citing *McElroy,*

7

367 U.S. at 896. On the other hand, where employees are not at will, such as here, or where the differential treatment results from enforcement of legislation governing the employment relationship, a Due Process claim is appropriate. The Court in *Engquist* explained that "the Fourteenth Amendment 'requires that all persons subjected to…legislation shall be treated alike, under like conditions and circumstances, both in the privileges conferred and in the liabilities imposed." *Id.* at 602, citing *Hayes v. Missouri,* 120 U.S. 68, 71-72 (1887). The Court highlighted the "crucial difference" between the government "exercising the power to regulate or license, as lawmaker" from its actions "as proprieter, to manage [its] internal affairs." *Engquist,* 553 U.S. at 598. In this case, Plaintiff Cannici is not an at will employee simply claiming that he was not treated like other employees based on discretionary criteria. Rather, there are two pieces of legislation at the center of Plaintiff Cannnici's claim: the Melrose Park Residency Ordinance and the Fire Protection District Act, 70 ILCS 705/1 *et seq.* (the "Act") The Ordinance is not a Fire Department rule, it is a Village Ordinance. The Act, an Illinois statute, specifically provides in Section 16.13b that Plaintiff Cannici could only be terminated for just cause after service of written charges and a hearing on those charges.

Where legislation is involved, as here with the Ordinance and the Act, an employee is on equal footing with all citizens seeking to protect their constitutional rights under state or local law. The *Engquist* Court specifically recognized the distinction between "an arm's-length regulation" and "treating seemingly similarly situated individuals differently in the employment context." *Engquist,* 553 U.S. at 604. In this case, however, the "highly discretionary and individualized sorts of decisions that public employers must make about their employees" is not at issue. Defendants' Br. p. 9, citing *Abcarian v. McDonald*, 617 F.3d 931, 938 (7th Cir. 2010). This case involves the employer acting in its sovereign role, enforcing a law, its residency ordinance. In fact, the

8

Ordinance is interpreted by application of the same case law applied to Ordinances governing those running for public office including the high-profile case of Mayor Rahm Emmanuel. In *Maksym v. Board of Election Com'rs of City of Chicago,* 242 Ill. 2d 303 (2011), the Illinois Supreme Court reviewed the residency ordinance governing Mayor Emmanuel's bid for office of Mayor of the City of Chicago. That same case and analysis was then applied in the employment context in the case of *Thomas v. Chicago Transit Authority,* 24 N.E.2d 245 (Ill. App. Ct. 1st Dist. 2014), which, like here, addressed a residency ordinance. The same analysis is applied whether the ordinance concerns the general public or an employment relationship. In *Abcarian,* the Seventh Circuit recognized the distinction between cases based on clear cut ordinances, such as the one before this Court, and the more discretionary types of decisions found in *Engquist*. There, the Seventh Circuit differentiated the *Olech* decision, where the class-of-one equal protection claims were first recognized, from the decision in *Engquist. Id.* at 938, discussing *Village of Willowbrook v. Olech,* 528 U.S. 562 (2000). The Seventh Circuit explained that in *Olech* a class-of-one claim was appropriate because, like here, it rested on "the existence of a clear standard against which departures, even for a single plaintiff, could be readily assessed." *Abcarian,* 617 F.3d at 938. On the other hand, in *Engquist,* the employment issue involved "inherently subjective discretionary governmental decisions." *Id.* That was the distinction the Seventh Circuit focused on in reviewing the trial court's decision in *Abcarian.* In fact, defendants in *Abcarian,* like Defendants here, argued before the trial court that "the class-of-one theory of equal protection has no application in the public employment context." *Abcarian v. McDonald,* 2009 WL 2448044, *5 (N.D. Ill. Aug. 10, 2009). The Seventh Circuit, however, did not affirm the district court's reliance on that argument, and instead found that the district court had properly dismissed the equal protection claim, "but for another reason," turning instead to the subjective discretionary versus objective dichotomy.

*Abcarian,* 617 F.3d at 938-939. That is the proper inquiry in determining whether a class-of-one claim is appropriate in the employment context.

Here, when the subjective versus objective analysis is applied, the result is a finding that a class-of-one claim is appropriate. Plaintiff's claim is about a residency statute and the Village could easily compare Mr. Cannici to the other firefighters who own homes outside Melrose Park. It is an objective test based on concrete criteria. The Seventh Circuit in *Abcarian* specifically noted that *Engquist*, the case Defendants rely on here, has "limited applicability when a decisionmaker's discretion is circumscribed by constitutional or statutory provisions." *Id.* at 939. In this case, the discretion of the Melrose Park Fire Department and the Village is circumscribed by the Ordinance (which, as discussed above, is like those applied to the general public under election laws), Illinois caselaw, which has set out the parameters for determining residency under such ordinances, *supra,* and The Act, which requires that any termination be with "just cause" rather than arbitrary. Moreover, the allegations support an Equal Protection claim that does not even rest on a class-of-one claim, like the *Beazer* case addressing a class of employees who use methadone. The allegations support several classes Cannici was a member of that do not necessarily rest on factors specific to him only (in other words, for which he would likely not be a class of one), including a class of employees whose spouses are openly residents of other municipalities and a class of employees who do not have established personal relationships with high ranking Melrose Park officials. (Complaint, ¶ 71, 72, 84). There is no rational basis for Defendants to treat its employees different based on the residency of their spouses or the personal relationships they have with high-ranking Village officials. For all these reasons, the Cannici case falls squarely within the *Olech* framework, or simply does not represent a class-of-one, and in either case his claim should not be dismissed.

10

### C. Absolute Immunity Does Not Protect the Board Defendants Because They Violated Constitutional Principles in Their Treatment of Plaintiff John Cannici.

Defendants are incorrect to expend considerable effort in applying the characteristics of certain safeguards from *Butz v. Economou* to their perspective on Cannici's allegations to argue that absolute immunity protects them from liability because they overlook a key component of that decision; namely, that violating constitutional principles is **_not_** protected by absolute immunity. 438 U.S. 478, 495 (1978). The Court there stated, "we are confident that *Barr* did not purport to protect an official who … violated those fundamental principles of fairness embodied in the Constitution." *Id.* As stated *supra*, Cannici claims that he was denied procedural due process and equal protection, and alleged that the conduct of the Board members is what denied him his constitutional rights (see Ex. A, ¶¶ 41-46, 47-67, 101). The Supreme Court stated that "it would be incongruous to hold that [public officials] may nevertheless willfully or knowingly violate constitutional rights without fear of liability." *Butz*, 438 U.S. at 495. Likewise, the Board Defendants should not be permitted to avoid liability simply because they *were supposed* to perform a judicial function like the bodies and individuals who were granted absolute immunity in the cases cited by Defendants, when they violated Cannici's constitutional rights during a process that was *supposed* to provide him with his constitutional rights.

For those same reasons, then, Defendants misapply the characteristics from *Butz* to this case. The *Butz* Court held that certain characteristics such as "insulation of the judge from political influence, the importance of precedent in resolving controversies, the adversary nature of the process," operated as safeguards to protect against action taken by judges, which justified the application of absolute immunity. *Id.* at 512. Here, those factors do not operate in Defendants' favor, as suggested in their Motion to Dismiss. Rather, those characteristics are not present, and absolute immunity should not be extended to Defendants. First, they are not insulated from

11

political influence, as all members of the Board are appointed by the Mayor. 65 ILCS 5/10-2.1-2 and 10-2.1-3. Though this, alone, does not render them a part of the political process, the allegations of this case do, as the Mayor is also a named Defendant in this case, and is alleged to have violated Plaintiff's equal protection rights as well, as described in greater detail in Docket No. 23. Similarly, precedent is not of much importance in deciding controversies where Plaintiff is brought before the Board to answer for a possible violation of the residency requirement for firefighters in the Village, but where other firefighters who more clearly violated that same requirement are not subject to action by the Board. The adversary nature of the process was compromised by the processes followed by the Board and their attorney in having numerous *ex parte* contacts with the prosecuting attorney. Permitting the Board Defendants to shroud themselves in the cloak of absolute immunity, despite their violation of fundamental principles of fairness protected in the Constitution is improper according to the very cases cited by Defendants, and should not be allowed.

## CONCLUSION

**WHEREFORE**, Plaintiff John Cannici respectfully requests that the Court deny Defendants' Board of Fire and Police Commissioners of Melrose Park, and Commissioners Michael Caputo, Mark Rauzi, and Pasquale Esposito's Motion to Dismiss Pursuant to §12(b)(6) in its entirety.

**Dated:** November 29, 2016

Respectfully submitted,

**John Cannici**

/s/ Ruth I. Major
One of His Attorneys

Ruth I. Major (ARDC No. 6205049)
The Law Offices of Ruth I. Major, PC
30 W. Monroe, Suite 1650
Chicago, Illinois 60603
Phone: (312) 893-7544
rmajor@major-law.com

## CERTIFICATE OF SERVICE

      I hereby certify that on November 29, 2016, I electronically served the foregoing **Plaintiff, John Cannici's, Response In Opposition To Defendants, Board of Fire and Police Commissioners of Melrose Park, and Commissioners Michael Caputo, Mark Rauzi, and Pasquale Esposito's, Motion to Dismiss Puruant to §12(B)(6)** upon:

> Jeffrey Fowler
> Joseph Gagliardo
> Michael A. Kuczwara, Jr.
> Laner Muchin, Ltd.
> 515 N. State Street, Suite 2800
> Chicago, IL 60654-4688
> 312-467-9800
> jfowler@lanermuchin.com
> jgagliardo@lanermuchin.com
> mkuczwara@lanermuchin.com
>
> Patrick O'Connor
> Hartigan & O'Connor, P.C.
> 53 W. Jackson Blvd., Suite 460
> Chicago, IL 60604
> 312-235-8880
> patoconnor@hartiganlaw.com
>
> K. Austin Zimmer
> Joseph Giambrone
> Del Galdo Law Group, LLC
> 1441 S. Harlem Avenue
> Berwyn, IL 60402
> 708-222-7000
> zimmer@dlglawgroup.com
> Giambrone@dlglawgroup.com

by emailing a true and correct copy to the aforementioned electronic address on November 29, 2016.

                                                                                 /s/ Ruth I. Major_____

Ruth I. Major
The Law Offices of Ruth I. Major, PC
30 W. Monroe, Suite 1650
Chicago, Illinois 60603
Phone: (312) 893-7544
rmajor@major-law.com

14