IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

```
JOHN CANNICI,                        )
                                     )
        Plaintiff,                   )
                                     )
                                     )
    v.                               )
                                     )   No. 16 C 9863
                                     )
VILLAGE OF MELROSE PARK,             )
ILLINOIS, BOARD OF FIRE AND          )
POLICE COMMISSIONERS OF              )
MELROSE PARK, ILLINOIS,              )
MICHAEL CAPUTO, MARK RAUZI           )
and PASQUALE ESPOSITO,               )
Members of the Board of Fire         )
and Police Commissioners of          )
Melrose Park, RICHARD                )
BELTRAME, Melrose Park Fire          )
Chief, and RONALD SERPICO,           )
Mayor of Melrose Park,               )
individually and in their            )
official capacities,                 )
                                     )
        Defendants.                  )
```

**MEMORANDUM OPINION AND ORDER**

Plaintiff John Cannici ("Cannici") brings this suit alleging that his employment as a firefighter for the Village of Melrose Park ("the Village") was improperly terminated for violating the Village's residency ordinance. In addition to the Village, Cannici has sued the Village's Board of Fire and Police Commissioners ("the Board"); individual Board members Michael Caputo, Mark Rauzi, and Pasquale Esposito (Caputo, Rauzi, and Esposito together, "the Board Members"); the Village's Fire

Chief, Richard Beltrame ("Beltrame"); and the Village's Mayor, Ronald Serpico ("Serpico"). Cannici's complaint seeks review of his termination under Illinois' Administrative Review Act ("the Act"), 735 ILCS 5/3-101 *et seq.* (Count I). He also asserts claims under 42 U.S.C. § 1983, alleging violation of his right to due process (Count II) and to equal protection (Count III). Cannici originally filed suit in the Circuit Court of Cook County, Illinois. The defendants removed the case to this court and now have filed several separate motions to dismiss Counts II and III of the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] For the reasons below, I grant the defendants' motions and remand the remaining claim for administrative review to the Circuit Court of Cook County.[2]

I.

In deciding a 12(b)(6) motion, I take all allegations in the complaint as true. *See, e.g.*, *Lavalais v. Village of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). Cannici's complaint alleges that he joined the Melrose Park Fire Department in 2000.

---

[1] Joint motions to dismiss Counts II and III have been filed by the Board and Board Members and by the Village and Beltrame. Serpico has moved to dismiss only Count III, since that is the only claim asserted against him. For purposes of this motion, it is unnecessary to distinguish between the various defendants. For simplicity, therefore, I use "defendants" to refer to them collectively.

[2] Cannici does not oppose remand of Count I if Counts II and III are dismissed. *See* Pl.'s Resp. to Board and Commissioners' Motion to Dismiss, at 2 n.2.

In 2008, he and his wife purchased a second home in Orland Park. According to Cannici, they purchased the home so that their oldest child could attend school in Orland Park, thereby making it unnecessary for Cannici's parents, who provided daycare for the children, to commute between Orland Park and Melrose Park. Cannici's wife and children moved to the Orland Park home, but Cannici continued to live in the Melrose Park residence. The family spent time together on the weekends.

This arrangement remained in place until 2013, when Cannici agreed to rent a portion of the Melrose Park home to a family experiencing financial hardship. Although the family occupied only part of the home, Cannici began staying at the Orland Park house with his wife and children. He insists, however, that he continued to treat the Melrose Park home as his residence (by, among other things, continuing to pay taxes on the home, keeping his personal property there, and receiving his mail there).

In May 2016, Cannici was "summoned to appear at an interrogation concerning his residency." Compl. ¶ 23. On learning of this, the family living in the Melrose Park home voluntarily moved out and Cannici moved back in. In June 2016, Fire Chief Beltrame filed a "Statement of Charges" alleging that Cannici had violated the Village's residency ordinance and

requesting a hearing before the Board of Commissioners.[3] According to Cannici, prior to the hearing, the Board's counsel engaged in ex parte communications with the prosecuting attorney. Specifically, Cannici alleges that the Board's counsel notified the prosecuting attorney of a status hearing in the case without giving notice to Cannici's counsel. In addition, Cannici asserts that the Board's Counsel sent the prosecuting attorney case law addressing issues relevant to Cannici's case. When Cannici became aware of the communications, he filed a motion to disqualify the prosecuting attorney and to reappoint the Board's counsel. The motion was summarily denied.

The hearing on the charges against Cannici was held before the Board on August 4, 2016. Cannici submitted a brief at the hearing, arguing that since his residency in the Village had previously been established, he was not required under Illinois law to maintain a physical presence in Melrose Park, so long as he had no intention of abandoning his residency. Cannici also testified at the hearing, explaining the circumstances

---

[3] The ordinance provides:

> Each and every officer and employee of the village, unless exempted by this chapter, must be a resident of the village as that term has been defined herein. Each and every officer must maintain resident status during his or her term of office. Each and every employee must maintain resident status during his or her period of employment.

Village of Melrose Park Code of Ordinances § 2.52.020.

surrounding his decision to rent his home, and stating that he never had any intention of abandoning his Melrose Park residency. Neither party presented any other evidence at the hearing.

On August 24, 2016, the Board issued an order on the charges against Cannici. After reviewing the evidence in the case, the order concluded that Cannici had violated the residency ordinance and that his employment would be terminated. Cannici maintains that the Board's decision mischaracterized his testimony, disregarded the evidence, and misapplied the law. In addition, he contends that although several other Melrose Park firefighters had living arrangements similar to his own, only he was charged with violating the residency ordinance.

II.

"A motion to dismiss under Rule 12(b)(6) does not test the merits of a claim; rather, it tests the sufficiency of the complaint." *Galvin v. Illinois Republican Party*, 130 F. Supp. 3d 1187, 1190 (N.D. Ill. 2015) (citing *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990)). I consider the defendants' arguments for dismissal of Cannici's § 1983 due process and equal protection claims in turn.

**A. Due Process**

To state a procedural due process claim under § 1983, "a plaintiff must allege (1) deprivation of a protected interest,

and (2) insufficient procedural protections surrounding that deprivation." *Michalowicz v. Vill. of Bedford Park*, 528 F.3d 530, 534 (7th Cir. 2008). The defendants do not dispute that Cannici has a protected interest in his employment. At issue is only the sufficiency of the procedural protections surrounding his termination.

Procedural due process claims are of two types: "(a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees." *Leavell v. Illinois Dep't of Nat. Res.*, 600 F.3d 798, 804 (7th Cir. 2010) (quotation marks omitted). Cannici does not allege that his due process rights were violated by an established state procedure. Rather, he claims that the defendants failed to implement or abide by the procedures in a fair manner. Hence, Cannici's due process claim is based on the "random and unauthorized actions of the state officials ... in failing to follow the requirements of existing law." *Michalowicz*, 528 F.3d at 535 (quotation marks omitted).

Because random and unauthorized misconduct is "inherently unpredictable, the state's obligation under the Due Process Clause [in such cases] is to provide sufficient remedies after its occurrence, rather than to prevent it from happening." *Id*. Thus, "for a plaintiff alleging a procedural due process claim based on random and unauthorized conduct of a state actor, the

6

plaintiff must either avail herself of state post-deprivation remedies or demonstrate that the available remedies are inadequate." *Leavell*, 600 F.3d at 805 (quotation marks omitted).

Here, Illinois' Administrative Review Act provides Cannici with a post-deprivation remedy. Cannici did not previously seek review under the Act. (Rather, he seeks to do so in the instant action). Nor has he alleged that review under the Act would be an inadequate remedial measure. Courts have in fact repeatedly held that the Administrative Review Act provides a remedy for the sort of due process violations alleged here. *See, e.g.*, *Michalowicz*, 528 F.3d at 536-37; *Leavell*, 600 F.3d at 806 (due process claim failed because adequate review was available in state court); *Stachowski v. Town of Cicero*, 425 F.3d 1075, 1078 (7th Cir. 2005) ("Stachowski could have sought administrative review of the Board's final decision under the Illinois Administrative Review Act.... Stachowski's failure to pursue the procedures available to him does not give rise to a due process claim.").

Rather than addressing the state's post-deprivation remedies, Cannici contests the adequacy of the pre-deprivation protections afforded him. He argues that based on the alleged ex parte communications between the Board's attorney and the prosecuting attorney, together with what he characterizes as the Board's one-sided decision, he was denied a meaningful

opportunity to be heard. It is firmly established, however, that "when adequate post-termination protections exist, a pretermination hearing need only provide an initial check against mistaken decisions -- essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Michalowicz*, 528 F.3d at 536-37 (quotation marks omitted). These requirements are satisfied here: prior to the termination hearing, Cannici was notified of the charges against him and he had an opportunity to file a motion challenging the alleged ex parte communications between the prosecuting attorney and the Board's counsel. At the hearing, moreover, Cannici was represented by counsel, he had an opportunity to testify, and he submitted briefing on pertinent legal issues.

In short, because Cannici has neither availed himself of post-deprivation remedies nor alleged the inadequacy of those remedies, he has failed to state a procedural due process claim under § 1983.

**B.    Equal Protection**

Cannici's equal protection claim is based on the defendants' alleged selective enforcement of the Village's residency ordinance. He argues that several other members of the Village's fire department have not maintained residences in Melrose Park but, unlike him, were never charged with violating

the ordinance. Cannici does not allege that he was treated unequally as a result of his membership in a protected class. Instead, his equal protection claim is based on a "class-of-one" theory. To prevail on a class-of-one equal protection claim, Cannici "must show that [he] was intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Black Earth Meat Mkt., LLC v. Vill. of Black Earth*, 834 F.3d 841, 851 (7th Cir. 2016) (quotation marks omitted).

Cannici's equal protection claim is foreclosed by the Supreme Court's decision in *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591 (2008), which expressly held that the "class-of-one theory of equal protection has no place in the public employment context." *Id*. at 594 (quotation marks omitted). The Court explained that the class-of-one theory presupposes the "existence of a clear standard against which departures, even for a single plaintiff, could be readily assessed." *Id*. at 602. As the Court pointed out, however, decisions in the employment context "are quite often subjective and individualized, resting on a wide array of factors that are difficult to articulate and quantify." *Id*. at 604. While the Constitution forbids the government from treating citizens differently based on subjective, individualized considerations when it acts as legislator or regulator, the government is not

9

subject to the same constraints when acting as proprietor or employer. *Id*. at 604. Without the ability to make these sorts of distinctions, the Court observed, governmental entities would be unable to carry about their functions. *Id*. at 607-08.

Because Cannici challenges his termination as a public employee, his class-of-one equal protection claim is precluded by *Engquist*. Cannici argues that *Engquist*'s holding is limited to employment decisions that are highly individualized and discretionary in nature. He contends that *Engquist* does not apply in his case because the Board's decision was confined to the narrow question of whether he had violated the residency ordinance. But the Seventh Circuit has made clear that "[u]nder *Engquist*, the prohibition on class-of-one claims in the public employment context is categorical." *Geinosky v. City of Chicago*, 675 F.3d 743, 747 (7th Cir. 2012).[4] Courts have consistently rejected attempts to carve out exceptions to *Engquist*'s holding in the employment context, *see, e.g.*, *Burge v. Rogers*, No. 13 C

---

[4] Cannici cites the court's remark in *Abcarian v. McDonald*, 617 F.3d 931 (7th Cir. 2010), that *Engquist* "has limited applicability when a decisionmaker's discretion is circumscribed by constitutional or statutory provisions." *Id*. at 939. In that passage, however, the court was referring to *Engquist*'s application in settings other than employment. To illustrate its point, *Abcarian* cited *Hanes v. Zurick*, 578 F.3d 491 (7th Cir. 2009), which involved a claim alleging that police officers had violated the plaintiff's equal protection rights by selectively singling him out for arrest.

6399, 2014 WL 2118739, at *1 (N.D. Ill. May 21, 2014) ("Plaintiffs argue that *Engquist* allowed the possibility that public employees may bring class-of-one equal protection claims under extraordinary circumstances, but that argument cannot be reconciled with *Geinosky*."), and have specifically rejected such arguments based on selective enforcement of residency requirements, *see, e.g.*, *Reiff v. Calumet City*, No. 10 C 5486, 2014 WL 4460457, at *3 (N.D. Ill. Sept. 10, 2014); *Langmead v. Monroe Cty. Office of Sheriff*, No. 11-CV-6003-CJS, 2013 WL 3759958, at *5 (W.D.N.Y. July 15, 2013).

In sum, Cannici's class-of-one equal protection claim is barred by *Engquist*. Accordingly, Count III of his complaint is dismissed.[5]

### III.

For the reasons discussed above, I dismiss Counts II and III of Cannici's complaint and remand his remaining claim for administrative review to the Circuit Court of Cook County.

---

**Elaine E. Bucklo**
United States District Judge

Dated: January 27, 2017

---

[5] The Board Members additionally argue that they are entitled to quasi-judicial immunity. Because I conclude that Cannici's claims fail on the merits, I do not reach this issue.