In the

# United States Court of Appeals

### For the Seventh Circuit

No. 17-1424

JOHN CANNICI,

*Plaintiff-Appellant*,

*v.*

VILLAGE OF MELROSE PARK, ILLINOIS,
*et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 16 C 9863 — **Elaine E. Bucklo**, *Judge*.

ARGUED JANUARY 19, 2018 — DECIDED MARCH 15, 2018

Before BAUER, MANION, and ROVNER, *Circuit Judges*.

BAUER, *Circuit Judge*. Defendant-appellee, the Village of Melrose Park ("the Village"), terminated plaintiff-appellant, John Cannici, a former firefighter with the Village, for violating the "Residency Requirements for Officers and Employees" ("Residency Ordinance") found in the Village's Code of

2                                                         No. 17-1424

Ordinances. Cannici filed suit against the Village claiming a violation of both his due process and equal protection rights, as well as requesting review under the Illinois Administrative Review Act ("the Act"). The district court dismissed his due process and equal protection claims and refused to exercise supplemental jurisdiction over the remaining state law administrative review claim. Cannici now appeals.

## I.  BACKGROUND

Cannici was a firefighter for the Village for sixteen years before the Village terminated him because of his violation of the Residency Ordinance. Cannici and his family lived in Melrose Park until 2008. In 2008, due to personal circumstances, the Cannici's bought a home in Orland Park while retaining ownership and possession of their Melrose Park home. During the week, Cannici's wife and two children lived in the Orland Park home, while Cannici lived in the Melrose Park home. The family spent the weekends together in one of the two homes.

In 2013, Cannici decided to rent the Melrose Park home out to the Cichon family. In an attempt to maintain residency at this home, Cannici reserved a portion of the home in the basement for his exclusive use, kept belongings in the home, maintained access to the home, paid utilities and taxes for the home, continued to receive all of his mail at this home, and used the Melrose Park address for all professional and personal matters. However, Cannici slept at the Orland Park home between June 1, 2013 and June 15, 2016.

No. 17-1424　　　　　　　　　　　　　　　　　　　　　　3

In May 2016, the Village requested an interview with Cannici to inquire about his residency. Section 2.52 of the Village's Residency Ordinance states:

> Each and every officer and employee of the [V]illage, unless exempted by this chapter, must be a resident of the [V]illage as that term has been defined herein. Each and every officer must maintain resident status during his or her term of office. Each and every employee must maintain resident status during his or her period of employment.

The Residency Ordinance defines resident as a "natural person who occupies a residence, as hereinbefore defined, as his or her principal place of residence and abode."

Upon review, the Board of Fire and Police Commissioners ("the Board") determined Cannici violated the Village's Residency Ordinance and issued a written Statement of Charges, dated June 28, 2016, seeking to terminate his employment. Before his hearing, Cannici received the written Statement of Charges and filed a motion challenging purported *ex parte* communications. This motion addressed the prosecuting attorney's communications with the Board's attorney regarding procedural requirements for scheduling an agreed hearing date and residency issues, as well as the prosecuting attorney's invitation from the Board's counsel to appear before the Board. Cannici's attorney did not receive this same invitation. The Board denied the motion.

On August 4, 2016, the matter proceeded to a hearing, at which Cannici and his counsel were both present. Based on

4                                                                No. 17-1424

testimony and arguments presented at the hearing, the Board found Cannici had failed to maintain residency throughout his employment. To support this finding, the Board acknowledged Cannici established residency, but had failed to maintain residency at his Melrose Park home between June 1, 2013 and June 15, 2016.

On September 26, 2016, Cannici filed a three-count complaint in state court. Cannici sought review under the Illinois Administrative Review Act and claimed a violation of his due process and equal protection rights. The defendants[1] removed the case to the Northern District of Illinois and subsequently filed a motion to dismiss. On January 27, 2017, the district court granted the motion to dismiss, refused to exercise supplemental jurisdiction over the remaining state law administrative review claim and thus, remanded the case back to state court.

Cannici now appeals the district court's dismissal of his due process and equal protection claims. Specifically, Cannici claims the district court improperly labeled the Board's conduct as "random and unauthorized," and thus, improperly analyzed his due process claim. He further claims the district court improperly applied *Engquist* in denying his equal protection claim. For the following reasons, we affirm.

## II.  DISCUSSION

We review a district court's ruling on a Rule 12(b)(6) motion to dismiss *de novo*. *LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 941 (7th Cir. 2010). In so reviewing, "[w]e construe

---

[1] Cannici also filed this lawsuit against Fire Chief Richard Beltrame, Board of Fire and Police Commissioners, Michael Caputo, Mark Rauzi, and Pasquale Esposito, and Mayor Ronald Serpico

No. 17-1424 5

the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in [the plaintiff's] favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

### A. Procedural Due Process

A procedural due process claim under § 1983 requires that the plaintiff allege "(1) deprivation of a protected interest, and (2) insufficient procedural protections surrounding that deprivation." *Michalowicz v. Vill. Of Bedford Park*, 528 F.3d 530, 534 (7th Cir. 2008). The parties do not dispute that Cannici had a protected interest in his continued employment as a Village firefighter. The issue before us is whether the Board provided sufficient procedural protections.

To determine whether a defendant provided sufficient procedural due process, we must first determine whether the claim is based on established state procedures or on random and unauthorized acts by state employees. *Leavell v. Ill. Dep't of Nat. Res.*, 600 F.3d 798, 804 (7th Cir. 2010). A claim based on a deprivation from established state procedures requires more than simply the availability of post-deprivation procedures. *Id.* at 805. The state's ability to predict when a deprivation will occur provides the state the ability to provide a pre-deprivation hearing. *Id.* Conversely, a claim based on random and unauthorized acts by state officials does not have the same predictability, and thus, only requires a meaningful post-deprivation remedy. *Id.* In this instance, the plaintiff must "avail herself of state post-deprivation remedies or demonstrate that the available remedies are inadequate." *Id.* (internal citations omitted).

Cannici argues that the district court erroneously analyzed the Board's decision as random and unauthorized conduct by state officials. Cannici claims the proper focus is whether the *deprivation* is difficult to predict, not whether the *misconduct leading to* the deprivation is difficult to predict. Thus, because the deprivation occurred through a formal, established procedure, a point at which all parties knew when the deprivation would occur, the established state procedure analysis is appropriate. We do not agree with this analysis.

In *Michalowicz*, the plaintiff, a former firefighter for the defendant, brought a due process claim. 528 F.3d at 533. The basis of his claim was that the defendant deprived him of his rights by using the Board of Trustees, an allegedly biased hearing committee, rather than an independent hearing committee as proscribed by relevant statute. *Id.* at 534–35. We found the due process claim based on a biased committee "a challenge to the 'random and unauthorized' actions of the state officials in question, i.e., to their unforeseeable misconduct in failing to follow the requirements of existing law." *Id.* at 535. We reasoned that, "[b]ecause such misconduct is inherently unpredictable," the state is obliged "to provide sufficient remedies after its occurrence, rather than to prevent it from happening." *Id.*

While the hearing in *Michalowicz* was a post-termination hearing, we nonetheless find this case instructive. Cannici's argument surrounding any potential bias of the Board is precisely the same unpredictable misconduct contemplated in *Michalowicz*. Thus, the district court's application of random and unauthorized acts by the Board was not erroneous.

No. 17-1424                                                                              7

Furthermore, we have found time and again that the Illinois Administrative Review Act provides sufficient post-deprivation relief. *See* 735 ILCS 5/3-101 *et seq.*; *see also Michalowicz*, 528 F.3d at 535–36; *Leavell*, 600 F.3d at 806; *Stachowski v. Town of Cicero*, 425 F.3d 1075, 1078 (7th Cir. 2005). Cannici does not contend that his rights under the Act have not been afforded to him. In fact, his counsel brought to our attention that the state court judge has found the administrative review claim in his favor and deferred further proceedings pending this Court's decision. Thus, we have no reason to believe Cannici has been deprived of his due process rights.

### B. Equal Protection

Cannici also claims the district court erroneously found that the Village did not violate his equal protection rights. Cannici brings this claim individually and not on the basis of membership in a protected class. He asserts the Village treated him differently than other similarly situated Village employees. Thus, we analyze under a class-of-one theory.

To prevail on a class-of-one equal protection theory, "a plaintiff must allege that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Forgue v. City of Chicago*, 873 F.3d 962, 968 (7th Cir. 2017) (citing *Engquist v. Or. Dep't of Argric.*, 553 U.S. 591, 601–02 (2008) (internal quotations omitted)).

In *Engquist*, the Supreme Court held "the class-of-one theory of equal protection does not apply in the public employ-

ment context." *Id*. at 598. The Court reasoned that "[t]here are some forms of state action … which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments." *Id.* at 603–04. Employment decisions unequivocally qualify as such. *Id.* at 604. The court went on to say,

> [T]he class-of-one theory of equal protection—which presupposes that like individuals should be treated alike, and that to treat them differently is to classify them in a way that must survive at least rationality review—is simply a poor fit in the public employment context. To treat employees differently is not to classify them in a way that raises equal protection concerns. Rather, it is simply to exercise the broad discretion that typically characterizes the employer-employee relationship. A challenge that one has been treated individually in this context, instead of like everyone else, is a challenge to the underlying nature of the government action.

*Id*. at 605.

Cannici argues that equal protection claims are not inappropriate in all government employment contexts, pointing to the Court's rationalization that "the Equal Protection Clause is implicated when the government makes class-based decisions in the employment context, treating distinct *groups of individuals* categorically differently." *Id.* (emphasis added). However, we are not presented with a group of individuals here. Cannici

No. 17-1424 9

claims, as a class of one, that the Village treated him differently than others when they decided to terminate his employment due to the Residency Ordinance, but not terminate others similarly situated. The Supreme Court has "never found the Equal Protection Clause implicated in the specific circumstance where, as here, government employers are alleged to have made an individualized, subjective personnel decision in a seemingly arbitrary or irrational manner." *Id.* Thus, Cannici's equal protection claim must fail.

Cannici also attempts to distinguish his case from *Engquist* by arguing that he was not an at-will employee, but rather two pieces of legislation are "at the heart of his claim," the Residency Ordinance and the Fire Protection District Act. Thus, he argues the holding in *Engquist* is not applicable. We disagree.

"Congress and all the States have, for the most part, replaced at-will employment with various statutory schemes protecting public employees from discharge for impermissible reasons." *Id.* at 606–07. "But a government's decision to limit the ability of public employers to fire at will is an act of legislative grace, not constitutional mandate." *Id.* at 607.

The relevant language from the Fire Protection District Act states:

> [N]o officer or member of the fire department of any protection district who has held that position for one year shall be removed or discharged except for just cause, upon written charges specifying the complainant and the basis for the charges, and after a hearing on those charges before the board of fire commissioners, affording

10                                                             No. 17-1424

>   the officer or member an opportunity to be heard
>   in his own defense.

70 ILCS 705/16.13b.

We acknowledge this section requires "just cause" for termination, rather than "no reason at all," upon which an at-will employee may be terminated. *See Engquist*, 553 U.S. at 606 ("The basic principle of at-will employment is that an employee may be terminated for a good reason, bad reason, or no reason at all.") (internal quotations omitted). However, nowhere in this statute does it provide full protection from termination. Furthermore, as we previously stated, the Village afforded Cannici precisely what this statute requires: written charges, a hearing, and the opportunity to present evidence. Thus, we affirm the district court's dismissal of Cannici's equal protection claim.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's findings.

CERTIFIED COPY
A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit